# COMPOSITE
# EXHIBIT A

# IN THE CIRCUIT COURT OF THE 17TH JUDICIAL
# CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

SUMMONS
CASE NO.:

PAMELA RAY,

    Plaintiff,

v.

ADAMS AND ASSOCIATES, INC., a business
entity, OTHNIEL McDOWELL, an individual,
and MARY GEOGHEGAN, an individual,

    Defendants.

Served
Date _8/26/21_ Time _11.55a_
MOG No. 243
is a certified process server in the
Circuit and County Courts
in and for the Second Judicial Circuit

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this Summons, Complaint, First Request for Production and First Set of Interrogatories in this action on Defendant:

**DEFENDANT: ADAMS AND ASSOCIATES, INC.**
    **c/o Registered Agent Solutions, Inc.**
    **155 Office Plaza Drive – Suite A**
    **Tallahassee, Florida 32301**

Each Defendant is required to serve written defenses to the Complaint or Petition on: Plaintiff's attorney:

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd, Suite 105
Plantation, FL 33324
(954) 424-1933

within 20 days after this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiffs; attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint or Petition.

DATED_____ AUG 24 2021

Clerk of the Court

(Court Seal)

By:_____
    Deputy

**BRENDA D. FORMAN**

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

PAMELA RAY,                                    CASE NO.:

     Plaintiff,

v.

ADAMS AND ASSOCIATES, INC., a business
entity, OTHNIEL McDOWELL, an individual,
and MARY GEOGHEGAN, an individual,

     Defendants.

_____/

## COMPLAINT

Plaintiff, Pamela Ray ("Ray"), through undersigned attorneys, files this Complaint against

the Defendants, Adams and Associates, Inc. (hereinafter referred to as "the corporate Defendant"),

Othniel McDowell (referred to as "Defendant McDowell"), and Mary Geoghegan (referred to as

"Defendant Geoghegan"), and all Defendants collectively are referred to as "Defendants"), and

alleges:

## JURISDICTION AND VENUE

1.    This suit is brought by Ray against the corporate Defendant pursuant to pursuant to

*Florida Statutes* § 760.01 *et seq.*, (the "Florida Civil Rights Act of 1992" or "FCRA"), the Florida

Whistleblower Act (*Florida Statutes* § 448.101 *et seq.*—"FWA") and Florida Constitution Art. 10,

§ 24(a-e), and against all of the Defendants under the Florida Constitution for unpaid wages and

retaliation for complaining about same and for the torts of gross negligent infliction of emotional

distress and outrage.

2.    Jurisdiction is conferred upon this Court by:

(a) *Florida Statutes* § 34.01(1)(c)4 (1995) because Ray is seeking more than $30,000 in damages;

(b) Additionally, jurisdiction is conferred upon this Court pursuant to Article V, § 20(c)(3) of the Florida Constitution and *Florida Statutes* § 26.012(2)(c) (1995) because equitable relief is sought by Ray.

3. Venue is proper for the Circuit Court of Broward County because:

(a) Plaintiff Ray was a whistleblower and has brought whistleblower claims and while she blew the whistle, while she was fired, and now presently resides in Broward County, Florida, and thus venue lies in Broward County pursuant to the FWA, and the corporate Defendant, at all material times conducted, and continues to conduct, business in Broward County, Florida;

(b) Additionally, venue lies pursuant to *Florida Statutes* § 47.051 because some of the acts that gave rise to Ray's claim occurred in Broward County, Florida, including tortious acts occurred in Broward County.

(c) Venue lies in Broward because Mary Geoghegan resides there.

## ADMINISTRATIVE EXHAUSTION/CONDITIONS PRECEDENT

4. Ray has complied with all the conditions precedent in this case, or they have been waived.

5. Ray filed a timely charge of discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission on or about February 11, 2020.

6. The FCHR did not make a determination on Brown's charge of discrimination within 180 days of its being filed, but did fully investigate or have the time to fully investigate all of Brown's substantive claims.

7.     This Complaint has been filed more than one hundred and eighty (180) days after filing a charge with the FCHR.

8.     Ray has satisfied all administrative prerequisites for all claims for relief asserted herein and for the Court's assumption of jurisdiction over all claims for relief herein pursuant to FCRA and his other claims.

9.     While there are no conditions precedent or administrative exhaustion requirements associated with bringing common law tort claims against the individual Defendants, Ray made clear in their charges of discrimination that she was subjected to such torts, and has exhausted all such conditions precedent and administrative exhaustion as to the Defendants.

## PARTIES

10.     Ray is a citizen of the State of Florida, who at all material times resided in Broward County, Florida.

11.     Defendant Adams and Associates, Inc. is a business entity which, at all times material, conducted substantial and continuous business in Broward County, Florida, and is subject to the laws of the State of Florida, and has a business office and business location in Florida.

12.     Defendant Othniel McDowell is an individual who, at all times material, conducted substantial and continuous business in Broward County, Florida, resides in Broward County, Florida, and is subject to the laws of the State of Florida and is a citizen of Florida, and who is a managerial employee with the corporate Defendant working in its Miami-Dade County office who had a duty under Florida's Constitution and FCRA to deal with complaints of unpaid wages (wage theft) and racial discrimination effectively consistent with the law, but he failed to do that but rather covered up the wage theft and racial discrimination and complaints of same.   Defendant Mary Geoghegan is an individual who, at all times material, conducted substantial and continuous business in Broward

County, Florida, resides in Broward County, Florida, and is subject to the laws of the State of Florida and is a citizen of Florida, and who is a managerial employee with the corporate Defendant working in its Miami-Dade County office who had a duty under Florida's Constitution and FCRA to deal with complaints of unpaid wages (wage theft) and racial discrimination effectively consistent with the law, but he failed to do that but rather covered up the wage theft and racial discrimination and complaints of same, and who resides in Broward County, Florida.

13.    At all times material, the actions of McDowell bound the corporate Defendant,[1] alternatively, McDowell was acting outside the course and scope of his employment and authority.

---

[1] Section 317 of the Restatement (Second) of Torts (1965), which language is identical to that in the First Restatement, provides:

§ 317 Duty Of Master To Control Conduct of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, *and*

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, *and*

(ii) *knows or should know of the necessity and opportunity* for exercising such control.

Restatement (Second) of Torts § 317 (1965) (emphasis added). Here, when McDowell and Geoghegan covered up wage theft and racial discrimination and affirmatively retaliated against Ray for engaging in his rights under Florida's Constitution and FCRA, subjected her to the grossly negligent infliction of emotional distress, it was on the premises of the corporate Defendant, and the corporate Defendant knew or had reason to know Defendants McDowell and Geoghegan were injuring Ray, and otherwise engaging in tortious behavior to her, and had the ability to control

14. The corporate Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of the Florida Civil Rights Act of 1992, *Florida Statutes* § 760.02(6-7) and the FWA.

15. The individual Defendant wase also Ray's employer as he had day-to-day operational control of the business and made decisions to hire, fire, promote, place employees into jobs permanently, including pay decisions, alternatively, the individual Defendant was not an employer of Ray.

16. Ray was, at all times material, an "employee" of the corporate Defendant as defined by *Florida Statutes* § 760.02(5).

17. The individuals who were employed by the corporate Defendant, as set forth below in detail, were agents of the Defendant and their actions bind the corporate Defendant, and the individual Defendants were both agents of the corporate Defendant at all material times, alternatively, at all times material, the individual Defendants, and the corporate Defendant's other agents were acting outside, alternatively inside, the course and scope of their employment.

18. At all times material to this action, the Defendants and certain of their representatives (agents) engaged in unlawful discriminatory, fraudulent, tortious, and retaliatory practices against Ray, which were motivated by Ray's race and/or his complaints of discrimination in violation of the Florida Civil Rights Act of 1992 and the Ray, and also subjected Ray to gross negligent infliction of emotional distress, and outrage.

## STATEMENT OF FACTS

19. Ray became employed by the corporate Defendant in July 2019.

20. Ray is a black American.

---

McDowell and Geoghegan, and knew or should have known of the necessity and opportunity for exercising such control, but failed to do so, which failure harmed Ray.

21. The corporate Defendant does business as Miami Job Corps.

22. Defendant Othniel McDowell was hired on or about August 3, 2019.

23. After Defendant McDowell was hired, Ray began to report to him.

24. Ray worked in the cafeteria.

25. The corporate Defendant operates a program for underprivileged youth seeking GEDs and to establish a trade.

26. Some of the youth reside on campus and others reside off campus but attend the program.

27. There are numerous staff that work as teachers, counselors, security, administrators, resident advisors, recreation staff, and because food is provided for the youth and the staff, numerous cafeteria workers.

28. Ray worked in the cafeteria.

29. At all times, Ray performed her job adequately.

30. Ray was a full-time employee.

31. The Defendants had a policy in which the full-time employees, like Ray, were scheduled to work 45 hours per week, with 1 hour supposedly being for a break, so the hours worked and paid for appeared to be 40 in a workweek.

32. However, the Defendants did not allow Ray to take the 1 hour break, nor did they allow her to put on her timesheet the true accurate number of hours that she was working, which was 45.

33. Thus, for each week, and Ray generally worked 5 days per week, Ray was required to work 5 hours for which she was not compensated.

34.    Ray complained about this to Defendant's HR department, specifically to Miss Chellie, who ran the HR department.

35.    Thus, all of her timesheets indicate that she had taken 5 hours for a "lunch/meal" break, but in reality no break was taken, and the Defendants knew it.

36.    Ray successfully completed her 165-day performance evaluation, and Defendant McDowell and Miss Chellie signed it which stated Ray was doing a good job, and they checked the box indicating that Ray's employment would be retained.

37.    Thereafter, one week (in September 2019) Ray turned in a timesheet for the hours Ray worked (outside of the 5 hours that were mislabeled "lunch/meal" break, which was 42 hours and 30 minutes), but the Defendants told her to resend the timesheet indicating that she worked only 40 hours.

38.    Thus, Ray was not paid for the 2 and one-half hours of time she worked, and Defendant McDowell put on the timesheet that the 2 and one-half hours was "unauthorized".

39.    Ray put the 42 and one-half hours on this timesheet because she was routinely working more than 40 hours (45 to be precise) but putting 40 hours on the timesheet because she was told by both Defendant McDowell and Miss Chellie that Ray would not be paid for any hours over 40, but Ray was upset that she was working hours without being compensated at all.

40.    Defendant wound up paying Ray 2 weeks later for the overtime hours she put on the timesheet, but paid it at a straight-time rate.

41.    After this, because of the discrimination and harassment by Defendant due to her race/ethnicity and giving her a hard time about refusing to pay her for hours worked, Ray collapsed in the dining hall in front of Defendant McDowell and a student named Gregory.

42.    Everything was spinning in Ray's head and she could not stand up.

43.     One of the nurses on staff attempted to take Ray's blood pressure, but could not get a reading.

44.     Security took Ray to the hospital, and her blood pressure was 225/119.

45.     Ray complained in writing about race discrimination to Miss Chellie in HR, and told her to give it to Mr. Robert Brewster who is Defendant McDowell's boss—Ray told Mr. Brewster that Defendant McDowell was out of control, and Ray also put in the letter that was harassment and failure to pay Ray properly.

46.     This letter was given to Defendants on November 25, 2019.

47.     After Miss Chellie read Ray's complaint letter, she took Ray's badge, Ray's keys, and told Ray that Ray was suspended and gave Ray a letter to that effect.

48.     Miss Chellie said that Ray was suspended pending investigation.

49.     This came on the heels of an incident between Ray and Defendant McDowell when he instructed Ray to mop the floor, and so she mopped it, but during it, Defendant McDowell told her to come see him in the office, and she told him should she come to the office or finish the mopping, and Defendant McDowell just sent her home.

50.     Ray had never received any discipline before and had not even been criticized before.

51.     Defendant McDowell is Jamaican and did not like the black Americans like Ray and Veronica.

52.     A student was present there too, and witnessed Defendant McDowell being abusive to Ray.

53.     Miss Chellie never even asked (nor did anyone else) for Ray's side of the story.

54. Mr. Brewster sent Ray home, and Ray later called Mary Geoghegan (Center Director) and she said report back to work Monday, November 25, 2019.

55. Ray reported back to work with her letter, which referenced discrimination, and she said wait a minute, and gave Ray's letter to Ms. Geoghegan, and that is when Ray was asked for her keys and badge and told her to leave.

56. Thereafter, Ray spoke to a co-worker who was a witness to the incident between Ray and Mr. McDowell and Ray asked her if Miss Chellie or anyone else ask her any questions regarding an investigation concerning Ray and Defendant McDowell and she said that not only was she not questioned but no one else was either.

57. Ray also spoke with the student who witnessed Defendant McDowell being abusive toward Ray, and the student told Ray that no one had spoken to her about the incident either, so it became clear to Ray that there really was no investigation that Defendants were performing.

58. Because Ray thought this situation was odd in that Defendants told her they were investigating a situation but that was a false statement to Ray as it was clear that they were really not, Ray called Miss Chellie on or around December 3, 2020 to inquire as to whether Ray was still "suspended", and the status of the "investigation", if any, and Miss Chellie told Ray to report tomorrow.

59. Ray reported on December 4, 2019, and Miss Chellie provided Ray a letter from Ms. Geoghegan that stated that Ray was terminated because Ray did not pass her 165-day evaluative period, but this is not true, as Ray was never insubordinate, and never written up and the 165 day evaluation form, signed by McDowell and Chellie states that Ray would be retained as an employee.

60.     Mr. Ryan when it comes to the count of the number of the students is putting in false information, by overstating the number to state that capacity is full all of the time when it is not, which allows Defendant to receive additional grant money to which it is not entitled.

61.     Miss Chellie is related to Defendant McDowell.

62.     There are numerous staff members who are engaging in sexual misconduct with students.

63.     The Defendant fired Ray because of her complaints of racial and ethnic discrimination and improper pay practices and because of her race.

64.     There was no legitimate business reason to fire Ray.

65.     The Defendant's termination of Ray was in violation of Florida's Whistleblower Act and *Florida Statutes* § 760.01 *et seq.*, and Florida's Constitution Art. 10, § 24(a-e).

66.     Individual Defendants McDowell and Geoghegan, as high-level managers and managers of the corporate Defendant, had a legal duty to refrain from subjecting Ray to severe emotional distress, discriminating and retaliating against her and engaging in the theft of her wages, and had a legal duty not to act outrageous toward her in such a way as to cause severe emotional distress, but they breached that duty by acting willfully, wantonly, and/or maliciously toward Ray.

67.     It is reasonably foreseeable that stealing the wages of employees isolating them, misrepresenting to those employees the reason for the Defendants' actions to coverup illegal activity, refusing to properly deal with his workplace discrimination, and then deciding to terminate them a few days after they complaint of wage theft and discrimination, and retaliation in order to intentionally inflict emotional harm on her is likely to cause severe emotional distress

in someone, here Ray—the behavior of McDowell and Geoghegan in this regard was willful, wanton, and malicious, and alternatively, reckless and/or intentional.

68.     Individual Defendant McDowell breached the duty to refrain from subjecting Ray to severe emotional distress and to refrain from acting outrageously toward him and in a willful, wanton, and malicious manner, alternatively, reckless and/or intentional, as described in detail above.

69.     Individual Defendants McDowell's and Geoghegan's misconduct and breaches of their duties toward Ray were both a cause in fact and proximate cause of significant emotional harm to Ray, including severe emotional distress which manifested itself in physical symptoms, such as, extreme sleeplessness, extreme anxiety, extreme financial worry, severe headaches, embarrassment, gastrointestinal issues, and cardiological issues (such as heart palpitations and panic attacks), and the termination resulted in Ray losing benefits at a time when she was in acute need of same and the individual Defendants knew it.

70.     Individual Defendants' above-described actions toward Ray constituted willful, wanton, or malicious alternatively reckless or intentional misconduct toward Ray.  Being free from race discrimination is protected in the Florida Constitution and the discrimination and retaliation Defendants waged against Ray were in violation of Ray' constitutional rights to be free from same, including the violation of Ray's rights under the Florida Constitution to her wages for hours worked.

71.     Ray has retained the undersigned legal counsel to prosecute this action in her behalf, and has agreed to pay counsel a reasonable fee for their services.

72.     Ray is entitled to her reasonable attorneys' fees if she is the prevailing party(s) in this action.

## COUNT I

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – TERMINATION CLAIM

73.     Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 72 as though fully set forth.  This Count is brought only against the corporate Defendant.

74.     Defendant discriminated against Ray with respect to her employment because of her race, because Ray's protected classification was a motivating factor for her termination.

75.     Defendant's actions violate the Florida Civil Rights Act of 1992, and specifically *Florida Statutes* § 760.10, by terminating Ray, by allowing their race to be a motivating factor(s) for their termination.

76.     As a direct and proximate result of the intentional and premeditated violation of the Florida Civil Rights Act by the Defendant with respect to its termination of them, by allowing their race to be a motivating factor for his termination, Ray has been damaged.

77.     Ray's damages include loss of work, inconvenience, humiliation, emotional pain, distress, depression, loss of their self-esteem, loss of dignity, loss of enjoyment of life, loss of back pay, loss of front pay, loss of bonuses, fringe and retirement benefits, lost future earnings capacity, and punitive damages.

WHEREFORE, as to Count I (which is only brought against the corporate Defendant), Ray respectfully requests that this Court:

(a)     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)     Order Defendant to make Ray whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at

trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)     Order Defendant to make Ray whole by providing compensation for future pecuniary losses, including front pay, alternatively, reinstatement in amounts to be proven at trial.

(d)     Order Defendant to make Ray whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)     Order Defendant to pay Ray punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(f)     Order Defendant to make Ray whole by compensating her for lost future earnings capacity.

(g)     Award Ray her attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper.

## COUNT II

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT – RETALIATION CLAIM

78.     Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 73 as though fully set forth.  This Count is brought only against the corporate Defendant.

79.     Ray engaged in protected activity by complaining about discrimination and harassment in the workplace, and thereafter, Ray was subjected to adverse employment action (which is set forth above—terminated a few business days after continuing to complain to management), and the protected activity and the adverse employment action are causally linked, as the decision-maker knew of the protected activities.

80. Defendant's actions violate the Florida Civil Rights Act of 1992, and specifically *Florida Statutes* § 760.10, by terminating Ray and allowing her complaints of discrimination and harassment to serve as a motivating factor for her termination.

81. As a direct and proximate result of the intentional and premeditated violation of the Florida Civil Rights Act by the Defendant with respect to its termination of her and by denying her wages, by retaliating against her because of their complaints of discrimination and harassment, Ray has been damaged.

82. Ray's damages include loss of work, inconvenience, humiliation, emotional pain, distress, depression, loss of their self-esteem, loss of dignity, loss of enjoyment of life, loss of back pay, loss of front pay, loss of bonuses, fringe and retirement benefits, lost future earnings capacity, and punitive damages.

WHEREFORE, as to Count II (which is only brought against the corporate Defendant), Ray respectfully requests that this Court:

(a) Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b) Order Defendant to make Ray whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c) Order Defendant to make Ray whole by providing compensation for future pecuniary losses, including front pay, alternatively, reinstatement (but in either event, Ray demands his shares

of stock to which he was promised but as to which the Defendants failed to provide him) in amounts to be proven at trial.

(d)     Order Defendant to make Ray whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(e)     Order Defendant to pay Ray punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(f)     Order Defendant to make Ray whole by compensating her for lost future earnings capacity.

(g)     Award Ray her attorneys' fees and costs in this action.

(h)     Grant such further relief as the Court deems necessary and proper.

## COUNT III

## GROSS NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

83.     Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 73 as though fully set forth.  This count is brought against all Defendants.

84.     Defendants' causing or allowing Ray to be degraded, subjected to racial harassment, wage theft, and terminated from her job in such a manner after subjecting her to traumatizing events (subjecting Ray to wage theft, discrimination, and retaliation, emotional distress, making misrepresentations to her, and intentional retaliation and discrimination was substantially certain to cause Ray mental or nervous injury that arises out of fright and excitement only and which actually did cause them such harm, etc.) to destroy her as a person were outrageous acts, and were willful, wanton, and/or malicious.

85.     Suffice it to say, the result of Defendants' engaging in a course of conduct toward Ray which a reasonable and prudent person would know would probably and most likely result in

injury to persons or property, caused them damage. Here, since the course of conduct was such that the likelihood of injury to other persons or property was known by the actor to be imminent or 'clear and present' and thus constitutes gross negligence on the part of Defendants, which the Defendants had a duty to refrain from subjecting Ray to, alternatively, the Defendants acted in a manner that was willful, wanton, and/or malicious. Gross negligence is defined as an act or omission that a reasonable, prudent person would know is likely to result in injury to another, and Defendants acted in that manner toward Ray. The Defendants, as described above, created and maintained a dangerous work environment though they had a specific duty on the part of the Defendants in this regard not to and they breached the duty.

86.    Defendants' causing or allowing Ray to be injured repeatedly to destroy them as a person, caused Ray to endure severe emotional distress, which emotional distress caused them severe emotional distress, as well, all of which constitutes a breach of the specific duty created by the Defendants with respect to their duty to avoid the creation of an unreasonable risk of harm to Ray. As examples of the severe mental and emotional distress that the Ray endured from the breach of Defendants' duty to them (which arise out of a mental or nervous injury that arises out of fright and excitement only),

    a.    Ray have experienced depression, withdrawal from society, serious panic attacks, lack of sleep, despondency, and loss of appetite.

    b.    Ray have also suffered gastroenterological issues such as severe stomach disorders, and headaches, caused by the emotional stress placed upon them by the Defendants.

87.    Ray suffered a physical impact by McDowell and Geoghegan one of the traumatizing events which caused the emotional distress is set forth above are spoken words to Ray, which impact resulted in severe emotional distress to them, which manifested itself in physical symptoms, as

described above, which occurred shortly after witnessing the traumatizing event and further discussions about the injury and the attendant circumstances regarding same were further traumatizing events for Ray. However, Ray need not plead or prove any subjection to a physical impact because the Defendants' conduct was willful, wanton, and/or malicious and thus grossly negligent.

88.     Defendants' actions constitute the gross negligent infliction of emotional distress.

89.     Defendants' conduct in committing tortious actions upon Ray was taken at a time when the individual Defendants were not acting in furtherance of the corporate Defendant's business and the traumatizing events arose from an act constituting race harassment/discrimination which is a scenario involving an injury to intangible personal rights, but irrationally believed that they were somehow benefiting the corporate Defendants by their actions.

90.     In short, Defendants had a duty to refrain from subjecting Ray to an unreasonable risk of harm, and their behavior breached that duty because they subjected her to an unreasonable risk of harm by their actions, which were both the proximate cause and cause in fact of Ray' injuries.

WHEREFORE, as to Count III, Ray respectfully requests that she be awarded compensatory damages, for the pain and suffering that they endured as a result of the intentional and outrageous acts of Defendants, Ray intends to amend the Complaint to add punitive damages after the appropriate hearing, and she seeks pre-judgment and post-judgment interest.

## COUNT IV

## VIOLATION OF THE WHISTLEBLOWER'S ACT - § 448.102

91.     Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 73 as though fully set forth. This claim is brought against the corporate Defendant.

92.     Ray objected to, and refused to participate in, an activity, policy, or practice of the Defendant which is in violation of a law, rule, or regulation, as set forth more fully above.

93.     Ray objected to the Defendant's intentional violations of Florida laws and regulations and federal laws and regulations, as set forth more fully above, including the Florida Constitution, FCRA, and other laws, and by complaining of retaliation and harassment.

94.     Ray refused to participate in an unlawful activity, policy, and practice of the Defendants, including but not limited to the Defendant's illegal schemes set forth in the above paragraph, in violation of the FWA.

95.     The failure of an employer to follow Florida's and federal laws pertaining to the Florida Constitution and FCRA, theft of wages, constitutes:

    (a)     an activity in violation of a law, rule, or regulation; and/or is

    (b)     a policy in violation of a law, rule, or regulation; and/or is

    (c)     a practice in violation of a law, rule, or regulation.

96.     As a direct and proximate result of Ray's protected activity under the Florida Whistleblower Act (her complaining on multiple occasions of violations of Florida and federal laws pertaining to workplace wage theft and discrimination, and the civil rights laws, and the adverse employment action the Defendants took against Ray because of her protected activity), including Defendant's subsequent termination of her in or about November 2019, shortly after she complained of the illegality), Ray has been damaged.  Her damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering, mental anguish, loss of enjoyment of life, punitive damages, and other non-pecuniary losses.

97.     An action under the FWA is not an action in tort, but rather is a statutory cause of action, as an at-will employee had no ability to sue in tort for any kind of wrongful termination.

WHEREFORE, as to Count IV, Ray respectfully requests that this Court (as to the corporate Defendant):

(a)     Order the Defendant to make Ray whole by providing compensation for past pecuniary losses including back pay, with pre-judgment interest, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(b)     Order the Defendant to make Ray whole by providing compensation for future pecuniary losses including front pay, in amounts to be proven at trial.

(c)     Order the Defendant to make Ray whole by providing compensation for non-pecuniary losses including emotional pain, suffering, loss of dignity, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(d)     Order the Defendant to pay Ray punitive damages for its malicious and/or reckless conduct, in amounts to be proven at trial.

(e)     Award Ray her attorneys' fees and costs in this action; and

(f)     Grant such further relief as the Court deems necessary and proper.

## COUNT V

## OUTRAGE

98.     Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 73 as though fully set forth.  This Count is brought against all Defendants.

99.     Individual Defendants' subjection of Ray to the loss of her job, particularly knowing that she was simply a black worker protected under FCRA and the Florida Constitution, who was a whistleblower complaining of discrimination and harassment and wage theft, and when coupled with the manner of termination (telling Ray shortly after she complained of illegal activity and

discrimination) is outrageous, and in both McDowell and Geoghegan's case being in a position to do something about it, but failing to take any action whatsoever to help Ray, but instead terminating Ray.

100. Individual Defendants' intentional fabrication of information to attempt to wrongly deny Ray of her employment entitlement and benefits to which she was lawfully entitled while she was in the middle of her employment, were outrageous acts which caused Ray to suffer severe emotional distress, which such distress manifested in physical symptoms.

101. Ray's termination has caused significant financial disruptions, and caused her to need psychological assistance because of the severe distress she suffered. As examples,

a. extreme sleeplessness, extreme anxiety, extreme financial worry, severe headaches, embarrassment, gastrointestinal issues, and cardiological issues (such as heart palpitations);

b. Ray also suffered gastroenterological issues such as severe stomach disorders, headaches, and physical pain, caused by the emotional stress placed upon her by individual Defendants.

102. Individual Defendants' actions were intentional and constitute the intentional infliction of emotional distress under such circumstances that a reasonably prudent person would characterize them as outrageous and caused significant damages to Ray.

103. Defendants' conduct was so open, obvious, pervasive, and known to the employees of the corporate Defendant, that the corporate Defendants knew or should have known of the conduct. The corporate Defendants, however, failed to take any appropriate action to remedy, correct, or prevent Defendants' conduct. Consequently, the corporate Defendant is vicariously responsible for Defendants' subjection of Ray to outrageous conduct, which is beyond all bounds of decency in a civilized society.

104. As a direct and proximate result of Defendants' subjection of Ray to outrageous behavior, and the corporate Defendant's failure to take appropriate corrective action to correct, remedy, or prevent such outrageous behavior, Ray has suffered damages. Ray's damages include, but are not limited to, lost income, emotional distress, mental anguish, and humiliation.

WHEREFORE, as to all Count V, Ray respectfully requests that she be awarded compensatory damages, for the pain and suffering that she endured as a result of the intentional and outrageous acts of Ray, and intends to seek punitive damages upon a hearing with the Court, and he seeks pre-judgment and post-judgment interest.

## COUNT VI

## FLORIDA CONSTITUTION Art. 10, § 24(a-e) Wages (All Defendants)

105. Ray re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 73 above as though fully set forth. This claim is brought by Ray against all Defendants.

106. Within the last 3 years that Ray were employed, Ray actually worked and complained to Defendants about having to work hours for which the Defendants provided no compensation, in violation of Florida Constitution Art. 10, § 24(a-e), and thus Ray was not paid for certain hours worked and the Florida Constitution requires the payment at the minimum wage "for all hours worked", and states nothing about the workweek, though certain entire weeks Ray worked but was paid nothing from the Defendants.

107. Ray was entitled to be paid at least the minimum wage (if not her wage rate consistent with her agreed compensation structure) for every hour and part of an hour that was worked for the Defendants, and for which the Defendants did not remunerate, and did not remunerate timely, but which all Defendants knew was being worked.

108.     By reason of the intentional, willful, and unlawful acts of Defendants, Ray has suffered damages, including compensatory damages, plus incurring costs and reasonable attorneys' fees.

109.     As a result of Defendant's violations of the Florida Constitution, which were not in good faith, Ray is entitled to liquidated damages.  Florida's Constitution states in pertinent part, as follows:

    (a)  PUBLIC POLICY.   All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.

    (b)  DEFINITIONS.   As used in this amendment, the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.

    (c)  MINIMUM WAGE.   Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida. Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15. On September 30th of that year and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor. Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January 1st. For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.

    (d)  RETALIATION PROHIBITED.   It shall be unlawful for an Employer or any other party to discriminate in any manner or take adverse action against any person in retaliation for exercising rights protected under this amendment. Rights protected under this amendment include, but are not limited to, the right to file a complaint or inform any person about any party's alleged noncompliance with this amendment, and the right to inform any person of his or her potential rights under this amendment and to assist him or her in asserting such rights.

(e) ENFORCEMENT. Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs. In addition, they shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief. Any Employer or other person found liable for willfully violating this amendment shall also be subject to a fine payable to the state in the amount of $1000.00 for each violation. The state attorney general or other official designated by the state legislature may also bring a civil action to enforce this amendment. Actions to enforce this amendment shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

(f) ADDITIONAL LEGISLATION, IMPLEMENTATION AND CONSTRUCTION. Implementing legislation is not required in order to enforce this amendment.

Florida Const. Art. 10 § 24(a-e). Ray believed in good faith that the actions of the Defendants' as set forth in Count VII constituted a violation of the Florida Constitution, and their complaints about it to the Defendants constitutes protected activity under the retaliation clause, as set forth in the next count.

WHEREFORE, as to Count VI, Ray is entitled to be paid back pay, front pay, plus liquidated damages, compensatory damages, prejudgment interest, post-judgment interest, attorneys fees, and costs.

## COUNT VII

## FLORIDA CONSTITUTION Art. 10, § 24(c) Retaliation (All Defendants)

110. Ray re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 73 above as though fully set forth. This claim is brought by Ray against all Defendants.

111. Within the last 3 years that Ray was employed, Ray actually worked and complained to Defendants about having to work hours for which the Defendants provided no compensation, in violation of Florida Constitution Art. 10, § 24(a-e), and thus Ray was not paid for certain hours

worked and the Florida Constitution requires the payment at the minimum wage "for all hours worked", and states nothing about the workweek, though certain entire weeks Ray worked but were paid nothing from the Defendants.

112.    Ray wase entitled to be paid at least the minimum wage (if not her wage rate consistent with her agreed compensation structure) for every hour and part of an hour that was worked for the Defendants, and for which the Defendants did not remunerate (or did not remunerate timely), but which all Defendants knew was being worked.

113.    By reason of the intentional, willful, and unlawful acts of Defendants, Ray has suffered damages, including compensatory damages, plus incurring costs and reasonable attorneys' fees.

114.    As a result of Defendant's violations of the Florida Constitution, which were not in good faith, Ray is entitled to liquidated damages.  Florida's Constitution states in pertinent part, as follows:

(a)    PUBLIC POLICY.   All working Floridians are entitled to be paid a minimum wage that is sufficient to provide a decent and healthy life for them and their families, that protects their employers from unfair low-wage competition, and that does not force them to rely on taxpayer-funded public services in order to avoid economic hardship.

(b)    DEFINITIONS.   As used in this amendment, the terms "Employer," "Employee" and "Wage" shall have the meanings established under the federal Fair Labor Standards Act (FLSA) and its implementing regulations.

(c)    MINIMUM WAGE.   Employers shall pay Employees Wages no less than the Minimum Wage for all hours worked in Florida. Six months after enactment, the Minimum Wage shall be established at an hourly rate of $6.15. On September 30th of that year and on each following September 30th, the state Agency for Workforce Innovation shall calculate an adjusted Minimum Wage rate by increasing the current Minimum Wage rate by the rate of inflation during the twelve months prior to each September 1st using the consumer price index for urban wage earners and clerical workers, CPI-W, or a successor index as calculated by the United States Department of Labor. Each adjusted Minimum Wage rate calculated shall be published and take effect on the following January

1st. For tipped Employees meeting eligibility requirements for the tip credit under the FLSA, Employers may credit towards satisfaction of the Minimum Wage tips up to the amount of the allowable FLSA tip credit in 2003.

(d)  RETALIATION PROHIBITED.   It shall be unlawful for an Employer or any other party to discriminate in any manner or take adverse action against any person in retaliation for exercising rights protected under this amendment. Rights protected under this amendment include, but are not limited to, the right to file a complaint or inform any person about any party's alleged noncompliance with this amendment, and the right to inform any person of his or her potential rights under this amendment and to assist him or her in asserting such rights.

(e)  ENFORCEMENT.  Persons aggrieved by a violation of this amendment may bring a civil action in a court of competent jurisdiction against an Employer or person violating this amendment and, upon prevailing, shall recover the full amount of any back wages unlawfully withheld plus the same amount as liquidated damages, and shall be awarded reasonable attorney's fees and costs. In addition, they shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including, without limitation, reinstatement in employment and/or injunctive relief. Any Employer or other person found liable for willfully violating this amendment shall also be subject to a fine payable to the state in the amount of $1000.00 for each violation. The state attorney general or other official designated by the state legislature may also bring a civil action to enforce this amendment. Actions to enforce this amendment shall be subject to a statute of limitations of four years or, in the case of willful violations, five years. Such actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

(f)  ADDITIONAL  LEGISLATION,  IMPLEMENTATION  AND CONSTRUCTION.  Implementing legislation is not required in order to enforce this amendment.

Florida Const. Art. 10 § 24(a-e).  Ray believed in good faith that the actions of the Defendants' as set forth in Count VII constituted a violation of the Florida Constitution, and her complaints about it to the Defendants constitutes protected activity under the retaliation clause, and it was further retaliation to refuse to pay the monies that were owed.

WHEREFORE, as to Count VII, Ray is entitled to be paid back pay, front pay, plus liquidated damages, compensatory damages, prejudgment interest, post-judgment interest, attorneys fees, and costs.

## DEMAND FOR TRIAL BY JURY

Ray demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: __August 23, 2021__

Respectfully submitted,

By: /s/ *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
The Kleppin Firm, P.A.
*Attorneys for Plaintiff*
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
Secondary E-Mails: assistant@gkemploymentlaw.com

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

PAMELA RAY,                                    CASE NO.:

      Plaintiff,

v.

ADAMS AND ASSOCIATES, INC., a business
entity, OTHNIEL McDOWELL, an individual,
and MARY GEOGHEGAN, an individual,

      Defendants.

_____/

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT ADAMS AND ASSOCIATES, INC.

Pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, Plaintiff propounds the following interrogatories to Defendant Adams and Associates, Inc. (hereinafter "Defendant") to be answered fully and completely in accordance with that rule. Each of the following interrogatories is continuing in nature. If at any time prior to the conclusion of the trial, Defendant, or its agents or attorneys, acquire supplemental or additional information relating to any of the subjects addressed herein, Defendant is requested to supplement its answers to these interrogatories to reflect such information.

### INSTRUCTIONS

In answering these interrogatories, the following instructions and definitions apply:

A. You are required to furnish all information which is available to you, including information in the possession of your agents or representatives, or any other person or organization acting on your behalf, and not merely such information known personally to you.

B.   If you cannot answer any of the following interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible and state whatever information or knowledge you have concerning the unanswered portions.

C.   Each interrogatory not only calls for information known to Defendant but also for all information available to Defendant through reasonable inquiry.

D.   In each case where Defendant identifies a person, state with respect to each such person:

1.   His or her full name;

2.   His or her last known residence address;

3.   His or her telephone number:

4.   His or her occupation, employer and business address at the date of the event or transaction referred to; and

5.   His or her present occupation, employer and business address.

E.   In each case wherein Defendant is asked to identify a writing or document, or when the answer to an interrogatory refers to a writing or document, please attach a copy of the document to your answer, or if the document is not available, state with respect to each such writing or document:

1.   The identity of the person who signed it or over whose name it was issued;

2.   The addressee or addressees;

3.   The nature and substance of the document or writing with sufficient particularity to enable the same to be identified;

4.   The date of the document or writing; and

5.   The identity of each person who has custody of the document or writing or any copies thereof.

F.     For purposes of these Interrogatories, "Defendant", "you", or "your" refers to Adams and Associates, Inc. and "Plaintiff" refers to Pamela Ray.

G.     Where a claim of privilege is asserted in objecting to any interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, provide the information required pursuant to the Florida Rules of Civil Procedure.

## **INTERROGATORIES**

1.  With respect to Plaintiff Pamela Ray:

    a.  identify who participated in the decision to discharge her;

    b.  identify each document (*e.g.*, personnel files, annual evaluations, etc.) reviewed in the decision-making process;

    c.  identify each document that was used and/or created during the decision-making process, provided a basis for the decision, or was used as an after-the-fact analysis of the decision; and

    d.  identify by description, date, substance, and, if a document is involved, the name of its custodian and current location, each communication (*e.g.*, letters memoranda, telephone call, face-to-face conversation, facsimile transmission, etc.) among any agents, servants, and/or employees of the Defendant concerning the decision to discharge Ms. Pamela Ray.

    <u>Answer:</u>

2. Fully articulate who discharged Ms. Pamela Ray, why, and if you assert Ms. Pamela Ray was not discharged, state the reasons that caused her to separate from employment.

<u>Answer</u>:

3. Please describe any discipline Plaintiff, Pamela Ray, received while employed with the Defendant and who the decision-maker was concerning each such discipline.

<u>Answer</u>:

4.    Please provide the last known address of the person who made the decision to terminate the Plaintiff, Pamela Ray, where he/she is currently employed and the position he/she holds, and if no longer employed with the Defendant state his/her last known address.

<u>Answer</u>:

5.     Identify all employees, officers, directors, or members of the organization of the Defendant who ever recommended the termination of Plaintiff, Pamela Ray, and the state the reason for such recommendation.

<u>Answer</u>:

6. Please provide the name, sex, age, religion and last known address of the individual(s) who replaced the Plaintiff, Pamela Ray, at the location where Plaintiff worked for the Defendant for all such individuals who have held her job since she was terminated.

<u>Answer</u>:

7. List the names, addresses and phone numbers of all persons who are believed or known by you, your agents or your attorneys to have any knowledge concerning any of the issues in this lawsuit and specify the subject matter about which each person has knowledge.

<u>Answer</u>:

## <u>VERIFICATION</u>

I, _____, being first duly sworn in accordance with law, do hereby depose and state that I have read the answers to Plaintiff's First Set of Interrogatories and that the answers are true and correct to the best of my knowledge and information.

_____
Corporate Representative

STATE OF FLORIDA

COUNTY OF

The foregoing instrument was executed before me this _____ day of _____, 2021, by _____, who is personally known to me or who has produced _____ as identification and who did take an oath.

_____
NOTARY PUBLIC

My Commission Expires:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served

with the initial complaint this 23rd day of August, 2021.

Dated:    __August 23, 2021__

Respectfully submitted,

By: /s/ *Chris Kleppin*
Chris Kleppin
Fla. Bar No. 625485
ckleppin@gkemploymentlaw.com
The Kleppin Firm, P.A.
*Attorneys for Plaintiff*
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405

Secondary E-Mails:    assistant@gkemploymentlaw.com

IN THE CIRCUIT COURT, 17TH
JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

PAMELA RAY,

CASE NO.:

     Plaintiff,

v.

ADAMS AND ASSOCIATES, INC., a business
entity, OTHNIEL McDOWELL, an individual,
and MARY GEOGHEGAN, an individual,

     Defendants.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
## DOCUMENTS TO DEFENDANT ADAMS AND ASSOCIATES, INC.

Plaintiff, Pamela Ray, by and through undersigned counsel and pursuant to Rule 1.350 of

the Florida Rules of Civil Procedure, hereby requests the Defendant, to produce and permit the

inspection and copying of the following documents and tangible things hereinafter within forty-

five (45) days from the date of service hereof.

As used herein, the term "document" shall mean every writing of record of every type and

description that is in the possession, custody, or control of Defendant, including, without

limitation, correspondence, statements, affidavits, memoranda, stenographic and handwritten

notes, diagrams, studies, publications, books, pamphlets, pictures, drawings and schematics of

every type, film, voice recordings, audio tape recordings, maps, reports, surveys, minutes,

telegrams, telexes, contracts, memoranda of agreement, diaries, graphs, emails, electronically-

stored information, checks, bank statements, income tax forms, other forms, microfilms, statistical

computations, data processing cards, computer records and computer tapes and printouts or things

similar to any of the foregoing; and every copy of such document where the original is not in the

possession, custody, or control of Defendant, or Defendant's counsel. Any such document bearing on any sheet or side thereof, any marks such as (but not limited to) initials, stamped indicia, comments or notations, or any character not a part of the original text or photographic reproduction thereof, is to be considered and identified as a separate document.

This document request shall be deemed to be a continuing one, and it pertains to all documents discovered or found subsequent to the date of your response to this request for production. Any such documents discovered or found subsequent to the date of your response to this request for production, shall be produced upon appropriate notice to the undersigned attorneys.

For purposes of this Request for Production, "Defendant" refers to Adams and Associates, Inc., and "Plaintiff" refers to Pamela Ray.

**WHERE A CLAIM OF PRIVILEGE IS ASSERTED IN OBJECTING TO ANY DOCUMENT DEMAND, AND AN ANSWER IS NOT PROVIDED ON THE BASIS OF SUCH ASSERTION, PROVIDE THE INFORMATION REQUIRED BY THE FLORIDA RULES OF CIVIL PROCEDURE.**

## **DOCUMENTS TO BE PRODUCED**

1.      Plaintiff's entire personnel file, including but not limited to the records pertaining to duties, salaries, commissions, bonuses, discharge, layoff or retirement.

2.      Documents of any type whatsoever which show any internal communications concerning Defendant's consideration of Plaintiff for termination or demotion at any time throughout the time he was employed by the Defendant.

3.      Documents of any type whatsoever which show any internal communications concerning Plaintiff's performance or performance problems, irrespective of whether same appears in Plaintiff's personnel file.

4.      Copies of any and all written policies or procedures utilized within the last five (5) years within the company regarding race harassment, retaliation and/or discrimination based on race arising under Title VII, The Age Discrimination in Employment Act and/or the Florida Civil Rights Act of 1992 or alleged violations of *Florida Statutes* § 440.205, irrespective of whether same is contained in the company's personnel manual.

5.      Any and all documents, memoranda or written summaries of any conversation or meetings with any past or present employee(s) of Defendant regarding the allegations of Plaintiff's Complaint.

6.      Any and all other documents, excluding only documents evidencing communications between Defendant and its attorneys, reflecting each communication (*e.g.*, letters, memoranda, telephone calls, face-to-face conversations, facsimile transmissions, etc.) between, among, to or from any agents, servants and/or employees of Defendant concerning the allegations of Plaintiff's Complaint.

7.	Any and all witness statements, whether written, typed, taped, or otherwise recorded, describing or relating to the conduct of which Plaintiff has complained in the Complaint filed in this action.

8.	The personnel files of all employees who filed complaints with the Defendant or its predecessors or any government agency alleging harassment, retaliation and/or discrimination based on disability or alleged violations of *Florida Statutes* § 440.205 against the Defendant, in the past five (5) years, within the State of Florida.

9.	The Plaintiff's complete salary and wage records, payroll records, commission records, and W-2 forms during his employment with the Defendant.

10.	All guidelines, policies, procedures, manuals, handbooks, notices or directives utilized and/or issued by the Defendant within the last five (5) years pertaining to the following:

(a)	The discipline and termination of its employees;

(b)	The performance evaluation of its employees;

(c)	Race harassment.

(d)	Retaliation.

(e)	Race or alleged violations of *Florida Statutes* § 448.101.

11.	Copies of all charges of wrongful termination on the basis of harassment, retaliation and/or discrimination based on race filed against the Defendant in the past 5 years with the Equal Employment Opportunity Commission, Florida Commission on Human Relations, the United States Department of Labor, and/or any other federal, state or local agency, by employees of the Defendant, within the State of Florida.

12. Complaints concerning the work performance of Plaintiff throughout the time she was employed by the Defendant, including any written warning notices to Plaintiff about these complaints.

13. Complaints from any employee or customer of the Defendant, or from any other person, regarding Plaintiff throughout the time Plaintiff provided services to the Defendant.

14. The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by the Defendant in the above-entitled proceeding.

15. All reports, studies and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by the Defendant in the above-entitled proceeding.

16. Insurance policies which the Defendant may have insuring it against liability for any claims of employment discrimination, including those in the above-entitled proceeding, during the past five (5) years, and also included all types of tort claims, such as negligence, defamation, assault, and battery in the same timeframe.

17. Any "reservation of rights" letter and/or denial of coverage letter from the Defendant's insurer regarding the above-entitled proceeding.

18. All documents which in any way support the Defendant's affirmative defenses.

19. Any and all documents submitted to the EEOC, FCHR, and/or the Broward County, Miami-Dade County, or Palm Beach County or equivalent, in connection with Plaintiff.

20. Any and all memoranda, diaries, journals or other documents prepared by Defendant or any of its officers, directors and employees, or any other person, which relate in any manner to Plaintiff's employment, whether or not prepared in anticipation of litigation.

21. All of Defendant's disciplinary records regarding Plaintiff.

22.     The complete personnel file, including but not limited to the records pertaining to duties, promotion, salary, commission, bonuses, evaluations, discharge, layoff or retirement of any person who participated in the decision to terminate the Plaintiff.

23.     All documents which indicate the breakdown of the workforce by each of the following characteristics: name, date of hire, transfers, promotions, disability, age, national origin, gender, ancestry, religion, during the time Plaintiff provided services to the company through the present time in the state of Florida.

24.     Any and all documents pertaining to job descriptions or job qualifications for all positions held by Plaintiff with the Defendant.

25.     The personnel files of each employee similarly situated to Plaintiff who was employed by the company during the last five (5) years in the state of Florida.

26.     All studies, reports, or analysis done by internal staff, consultants, government agencies, or others related to any and all employment practice, policy, procedure, or statistics of the Defendant, if conducted during the last five (5) years.

27.     Any and all letters, notes, memoranda, and records of any kind, including adverse, negative, or favorable comments concerning the Plaintiff, during the period of time that Plaintiff worked for Defendant.

28.     The complete personnel file including but not limited to the records pertaining to dates, promotions, salary, commissions, bonuses, evaluations, discharge, layoff or retirement of the person who replaced Plaintiff at the location where he worked when he separated from employment with Defendant.

29.     All documents related to the Defendant's efforts to prevent employment discrimination in the workplace, including those made by the Defendant in an effort to comply

with state and federal laws or regulations relating to the maintenance of a non-discriminatory environment, if generated within the last five (5) years.

30.     Any and all documents provided to Florida Department of Labor and Employment Security, the Unemployment Appeals Commission, or any other governmental agency concerning any unemployment claim or perceived unemployment claim filed by Plaintiff.

31.     All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories or used in answering those interrogatories.

32.     All documents relied on in drafting the Defendant's Answer and Affirmative Defenses.

33.     All documents pertaining to any investigation of discrimination or harassment based on any complaints by Plaintiff to Defendant or any governmental agency.

34.     The personnel files of:

a) Mary Geoghegan

b) all employees similarly situated to Ray

c) Ray's replacement

d) Ray's supervisor

e) Othniel McDowell

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served

with the initial complaint this 23rd day of August, 2021.

Dated:   __August 23, 2021__

Respectfully submitted,

By: /s/  *Chris Kleppin*
　　Chris Kleppin
　　Fla. Bar No. 625485
　　ckleppin@gkemploymentlaw.com
　　The Kleppin Firm, P.A.
　　*Attorneys for Plaintiff*
　　8751 W. Broward Blvd.
　　Suite 105
　　Plantation, FL 33324
　　Tel. (954) 424-1933
　　Fax (954) 474-7405
Secondary E-Mails:  assistant@gkemploymentlaw.com
